**IN THE UNITED STATES COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| SPRINT SOLUTIONS, INC. and SPRINT COMMUNICATIONS COMPANY L.P., )<br><br>Plaintiffs, )<br><br>v. )<br><br>ANTWON S. ROBINSON, KEITH D. JONES, JONATHAN WALKER, BETTIE N. JACOX, MICHAEL DRONEY, JOAN ROBINSON, and JOHN and JANE DOES 1-20.<br><br>Defendants. ) | Civil Action No: _____<br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs Sprint Solutions, Inc. and Sprint Communications Company L.P. (collectively "Sprint" or "Plaintiffs"), hereby file this Complaint for Damages and Injunctive Relief against Antwon S. Robinson, Keith D. Jones, Jonathan Walker, Bettie N. Jacox, Michael Droney, Joan Robinson, and John and Jane Does 1-20 (collectively, "Defendants") and state:

### INTRODUCTION

1.      Sprint sells wireless handsets and other mobile devices under the brands Sprint, Sprint Prepaid, Boost Mobile, Virgin Mobile, payLo, and Assurance Wireless ("Sprint Phones" or "Phones") for use on Sprint's wireless network at prices significantly below the wholesale price of the Phones to make them more widely accessible to consumers.  Defendants and their co-conspirators are perpetrators of an unlawful scheme (the "Handset Theft and Trafficking Scheme" or the "Scheme") to profit from the illegal acquisition and resale of new Sprint Phones, by outright theft, by targeting Sprint dealers, retailers, and customer accounts, and by stealing the

1

substantial financial investment that Sprint makes in its Phones, for their own profit and to the detriment of Sprint and its customers.

2.      Defendants and their co-conspirators acquire the new Sprint Phones through various methods—predominantly through various types of fraud, including account fraud, but also, on information and belief, through the use of "runners," "credit mules,"[1] and mobile device theft.   As part of the Handset Theft and Trafficking Scheme, the Phones, which may be purchased and sold multiple times, ultimately end up in the hands of someone other than the consumer with whom Sprint has a business relationship.   Along the way, the Phones are "unlocked" so that they operate on wireless networks other than Sprint.  Often the ultimate user of the phone is located overseas, in a country where the wireless service provider does not underwrite the cost of new phones.

3.      Defendants' Scheme takes advantage of the relationship between Sprint and its dealers, retailers, and customers, including the fact that Sprint allows its authorized dealers to access its order entry system, on behalf of Sprint's customers to place equipment and service orders on their accounts, and that Sprint invests in its Phones to reduce the costs for its consumers; whereas wireless service providers in other countries do not.  Defendants use fraud and egregious misrepresentations to defraud Sprint, its dealers, and its customers—to steal equipment and service.  By obtaining the new Sprint Phones under false or fraudulent pretenses from Sprint and reselling or diverting them to other markets where phones are not subsidized, the Scheme converts Sprint's investment dollars into profits for Defendants and their co-

---

[1] A "runner" is an individual or entity that makes multiple purchases of new Sprint Phones on behalf of phone traffickers like Defendants.  A "credit mule" is an individual or entity that signs up for wireless service with Sprint – never intending to comply with the terms of the agreement – to obtain new subsidized Sprint Phones for phone traffickers like Defendants.   A copy of the Federal Trade Commission's June 2014 Consumer Credit Mule Warning is attached hereto as **Exhibit A**.

conspirators.  Although Defendants may participate in less than all of the steps in the process of diverting Sprint Phones, each of Defendants' acts is a violation of Sprint's rights and causes significant damage to Sprint.  Additionally, as participants in the conspiracy, Defendants are liable for the harm caused to Sprint by the entire Scheme.

4.      The Scheme causes tremendous harm to Sprint and to consumers.  In addition to the pecuniary losses caused by Defendants' theft of Sprint's mobile devices, including Sprint's lost investment in the Phones, Sprint's lost sales and market expenses, and the lost expected customer revenue, Defendants' misconduct has harmed Sprint's relationships with its customers, dealers, retailers, and others.  Defendants' Scheme also involves unlawfully accessing Sprint's protected computer systems and wireless network; trafficking of Sprint's protected and confidential computer passwords; willful infringement of Sprint's trademarks; and/or stealing legitimate customer upgrades.  Defendants, who illegally access Sprint's protected computer networks to acquire products and services for resale, are not only stealing from Sprint but are causing substantial damage to Sprint's brand, image, and reputation.

5.      Sprint seeks to recover damages for the harm caused by Defendants' Handset Theft and Trafficking Scheme, and to obtain an injunction prohibiting Defendants from continuing to perpetrate the Scheme.

6.      All conditions precedent to filing this action have been performed, waived or excused.

7.      Sprint has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

3

## PARTIES, JURISDICTION, AND VENUE

8.      This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

9.      Sprint Solutions, Inc. is a Delaware corporation, with its principal place of business in Reston, Virginia.

10.      Sprint Communications Company L.P. is a Delaware limited partnership, with its principal place of business in Overland Park, Kansas.

11.      Defendant Antwon S. Robinson ("Antwon Robinson") is an individual and a resident of Homewood, Illinois and is personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief, Defendant Antwon Robinson resides at 1115 191st Street, Homewood, Illinois 60430.

12.      Defendant Keith D. Jones ("Jones") is an individual and a resident of Montgomery, Alabama, and is personally engaged in, and helped facilitate, the improper conduct described herein, including the theft of Sprint phones in Cook County, Illinois.   Upon information and belief, Defendant Jones resides at 413 Turtle Court, Montgomery, Alabama 36117.

13.      Defendant Jonathan Walker ("Walker") is an individual and a resident of Douglasville, Georgia, and is personally engaged in, and helped facilitate, the improper conduct described herein.  Upon information and belief, Defendant Walker currently resides at 7631 Dallas Highway, Douglasville, Georgia 30134.

14.      Defendant Bettie N. Jacox ("Jacox") is an individual and a resident of Homewood, Illinois, and is personally engaged in, and helped facilitate, the improper conduct

4

described herein. Upon information and belief, Defendant Jacox resides at 1115 191st Street, Homewood, Illinois 60430.

15.     Defendant Michael Droney ("Droney") is an individual and a resident of Riverdale, Illinois, and is personally engaged in, and helped facilitate, the improper conduct described herein. Upon information and belief, Defendant Droney resides at 14520 S. Atlantic Avenue, Riverdale, Illinois 60827.

16.     Defendant Joan Robinson ("Joan Robinson") is an individual and a resident of Glenwood, Illinois, and is personally engaged in, and helped facilitate, the improper conduct described herein. Upon information and belief, Defendant Joan Robinson resides at 226 E. Maple Drive, Glenwood, Illinois 60425.

17.     Upon information and belief, Jane and John Does 1-20 ("Doe Defendants") are individuals and residents of Cook County, Illinois, and are personally engaged in and helped facilitate the improper conduct described herein, including the theft of new Sprint Phones in Cook County, Illinois. The Complaint will be amended to include the name or names of the Doe Defendants when such information becomes available.

18.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because Sprint's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. arise under federal law and because diversity exists between the parties and the amount in controversy exceeds $75,000.00 exclusive of costs, fees, and interest. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

19.     Defendants are subject to the personal jurisdiction of this Court because they are residents of the State of Illinois, or because they have conducted, engaged in and carried out business ventures within the State of Illinois, including the theft and resale of new Sprint Phones; or have committed tortious acts within the State of Illinois; and have engaged in substantial and not isolated activity within the State of Illinois.

20.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants either reside in this district or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### SPRINT'S BUSINESS MODEL

21.     Sprint and its affiliates offer a comprehensive range of telecommunications services to consumers, businesses, and government users.  Sprint currently serves more than 56 million customers nationwide, and is widely recognized for developing, engineering, and deploying innovative technologies.  The Sprint companies and affiliates highly value the outstanding business reputation they have worked hard to develop.

22.     Sprint's wireless program enables Sprint customers to choose from a variety of monthly voice and data plans for use on cutting edge devices on the Sprint wireless network.  In addition to being available through Sprint online, over the phone with authorized Sprint customer service representatives, and in its stores, Sprint Phones and wireless service are sold through authorized Sprint dealers and retailers around the country, with whom Sprint has contractual relationships.  Authorized Sprint dealers  with the proper credentials can access Sprint's order entry system to make changes to customer's accounts, order equipment and services, designate an equipment delivery location, and process payments, on behalf of the Sprint customer.  Sprint

prides itself on its customer service and promptly ships out new orders for new Sprint Phones to legitimate customers.

23.     Sprint protects access to its customers' accounts and their personal identifying information through the use of numerous security mechanisms, including secret PINs, passwords and/or security questions.   After a customer is authenticated through one or more of these security mechanisms, Sprint accesses the customer's account on its secure internal computers and allows the customer to place orders or make changes to his/her account.   The authorized customer can order devices or equipment to be shipped to an address provided by the customer. Additionally, Sprint restricts access to its protected computer network by requiring authorized dealers and retailers to log in using special credentials to open, place orders, and make changes to customer accounts.   Once a Sprint dealer logs into Sprint's system using their unique credentials, their computer is able to communicate with Sprint's network to open accounts, make changes, and place orders, which are promptly processed and filled by Sprint.

24.     Sprint's business model is based upon Sprint's ability to deliver affordable, innovative, and desirable products and services to consumers.   Therefore, Sprint assists its customers in their acquisition of Sprint Phones for use on the Sprint network by selling the Phones for substantially less than what Sprint pays to the manufacturers for the Phones.   Sprint recoups the money it loses on the Phones through revenue earned on the sale of Sprint service, which customers must use to transmit and receive voice, text, and data on the Sprint Phones.

25.     In addition to subsidizing Sprint Phones, Sprint also offers its customers the option of paying off the Phone in installments or leasing a Phone from Sprint, as well as providing discounts, rebates, and other incentive programs by which Sprint heavily invests in the Phones to the benefit of its customers.   These types of substantial subsidies and investment

programs are not offered by telecommunications carriers outside the United States; generally, those consumers must pay full price for the phones from the manufacturers. The full value of the Phone in the case of theft or the difference between the value and the subsidized price offered by Sprint is the profit sought by handset traffickers like Defendants.

26. Sprint Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones. A copy of the Terms and Conditions is attached hereto as **Exhibit B**. These Terms and Conditions are set forth in printed inserts that are included with the purchase of every Sprint Phone.

27. To make its customers' experience as convenient as possible, Sprint provides various methods for its customers to manifest their agreement to the Terms and Conditions, depending on the type of service they obtain and the method and sales channel through which they activate their service. In some cases, customers are asked to sign a written contract; in others they acknowledge their agreement orally by phone; and in other situations they may indicate their agreement by clicking the appropriate buttons on a website. In the case of pay-as-you-go or prepaid service, customers confirm their agreement by purchasing a Phone in a package that conspicuously indicates that their purchase or use of the phone constitutes their agreement to the Terms and Conditions. All of the methods used by Sprint for obtaining its customers' agreement to the Terms and Conditions are legally valid and appropriate, and the Terms and Conditions constitute a valid and binding contract between Sprint and each of its customers.

28. Sprint is able to offer its Phones to customers at reduced prices only if the Phones are used as intended on the Sprint wireless network. Manufacturers that produce wireless phones for Sprint install proprietary software, requested and paid for by Sprint, on the Sprint Phones.

Among other things, this software is intended to prevent the Phones from being used outside the Sprint network.

29.     Wireless technology is constantly changing and improving, and the wireless industry is intensely competitive.  Sprint expends substantial resources to maintain its position as an industry leader and to ensure that its network, handsets, and all of its products and services are at the cutting edge of the latest technological developments.  Providing its customers with the highest quality and most advanced technology is a key differentiator for Sprint and central to its business strategy.  Sprint is constantly and aggressively developing, engineering, and deploying innovative technologies to benefit its customers.

30.     Sprint invests heavily in efforts to provide its customers with the most up-to-date wireless handsets, and shoulders most or all of the cost of purchasing a new phone for its customers.  Sprint makes phones available to new customers at a low cost when they initiate wireless service, and also provides new subsidized phones to existing customers at regular intervals.

31.     Sprint made a particularly significant and widely publicized investment for its customers in the Smartphone market.  As reported in The Wall Street Journal, Sprint agreed to buy 30.5 million iPhones from Apple over four years, at a cost of more than $20 billion.  Copies of newspaper articles discussing Sprint and the iPhone are attached hereto as **Composite Exhibit C**.  As the demand, and therefore, the price, for Smartphones in various world markets skyrockets, Sprint's subsidized iPhones are a particularly attractive and lucrative target for participants in the Handset Theft and Trafficking Scheme.

**SPRINT'S TRADEMARK RIGHTS**

32.     Sprint Communications Company L.P. owns federal trademark registrations for the standard character and stylized Sprint® marks (collectively, the "Sprint Communications Marks").   Sprint Solutions, Inc. has been assigned the right to use and enforce the Sprint Communications Marks.   Copies of the certificates of registration issued by the United States Patent and Trademark Office are attached hereto as **Composite Exhibit D**.  The stylized Sprint Communications Marks are depicted below:

    

33.     Sprint has been assigned the right to use and enforce the standard character and stylized Virgin Mobile, payLo, Assurance Wireless and Boost Mobile trademarks (collectively, the "Assigned Marks"), the stylized versions of which are depicted below:

                    



The Sprint Communication Marks and Assigned Marks will collectively be referred to as the "Sprint Marks."

34.     Sprint uses the Sprint Marks on and in connection with its telecommunications products and services.

35.     Sprint Marks have become an intrinsic and essential part of the valuable goodwill and property of Sprint, who protects the Sprint Marks.   The Sprint Marks are well

established and well known to customers and the trade as symbols identifying and distinguishing Sprint's products and services, and signifying distinctive products and services of high quality. Only Sprint and its expressly authorized, affiliated agents are permitted to use the Sprint Marks. The Sprint Marks are valid, distinctive, protectable, and famous. The Sprint Marks have acquired secondary meaning, and their use is associated exclusively with Sprint.

## DEFENDANTS' MISCONDUCT

36.     Sprint has discovered that, although large quantities of its Phones are being purchased throughout the United States, a significant number of these Phones are not being used on the Sprint network.   Instead, entities and individuals such as Defendants and their co-conspirators, with no intention of lawfully connecting to or using the Sprint wireless network, are fraudulently acquiring and reselling new Sprint Phones in bulk quantities.   The Phones are acquired, either directly by Defendants or through their co-conspirators, through illicit means, such as through runners and/or credit mules and unauthorized orders on existing Sprint accounts. These Phones are then sold for a substantial profit and ultimately shipped overseas, where they can be used on other wireless carriers' networks, or shipped to other domestic traffickers, who add them to larger shipments headed overseas.   The Phones are usually taken out of their original packaging, and all accessories, warranties, and manuals are removed, before being shipped overseas.   The Phones are often unlocked by Defendants or their co-conspirators, to raise their value and prepare them for use on foreign carriers. Defendants undertake these actions for their own profit

37.     Once a Sprint Phone is unlocked and/or shipped overseas to be used on other wireless networks, Sprint no longer has a revenue source to recoup its investment on that Phone.

38.     If Sprint identifies a Phone as connected with theft, fraud, or other loss, as it has done with many of the Phones acquired by Defendants, the electronic serial number (ESN) is red-flagged in Sprint's system and the Phone can no longer be used on the Sprint network.  This is done to protect Sprint from further harm and in an attempt to deter criminal activity.  The Phone is thereafter referred to in the handset trafficking community as having a "Bad ESN."  As it is no longer a functioning Sprint Phone, the only value of a Bad ESN Phone is in unlocking the handset for use on other networks and overseas resale.

39.     Defendants knowingly and willfully engaged in an enterprise that traffics in and resells new Sprint Phones.  Defendants use fraud and other illicit means to acquire the new Sprint Phones and, upon information and belief, sell those Phones through various co-conspirators.  In addition, Defendants fraudulently steal Sprint service by adding lines to legitimate Sprint customer accounts, often Sprint business customer accounts.  While the complete extent of Defendants' activities in the Handset Theft and Trafficking Scheme is not yet known, Defendants are actively involved in several integral components of the conspiracy.

40.     Contrary to their representations to Sprint and Sprint's authorized dealers whom Defendants target, Defendants are not authorized Sprint dealers or retailers, employees, supervisors, managers, information technology specialists, agents or representatives.  Defendants have no legitimate connection to Sprint.

41.     Upon information and belief, since at least 2012, Defendants and their co-conspirators have been actively engaged in the Handset Theft and Trafficking Scheme by, *inter alia*, acquiring and reselling large quantities of new Sprint mobile devices through fraudulent orders placed on the accounts of legitimate Sprint customers, including business customers.

Each Defendant actively participates in one or more aspects of the Scheme along with numerous co-conspirators.

42. As part of their Scheme, Defendants call authorized Sprint dealers and fraudulently identify themselves as Sprint employees from the Information Technology Department who need to access the store's computer to perform system maintenance or updates.[2] After confirming their fraudulent identities, Defendants, who have extensive knowledge of Sprint's internal computer systems, instruct the store employee on how to download a software program called TeamViewer.

43. TeamViewer is a remote access program that enables the user, in this case Defendants, to remotely control the target computer from any location thereby giving Defendants access to Sprint's protected computer system[3], including customer account information and the ability to process equipment orders.

44. Once they gain remote access to the dealer's computer system through TeamViewer, Defendants use the dealer's digital certificate[4] to log into Sprint's order entry system on Sprint's protected computer network. Defendants place orders for new Sprint devices on the accounts of legitimate Sprint customers, and bill the devices to those accounts. The fraudulently placed orders appear legitimate because, by using the TeamViewer software, the orders that Sprint receives and processes come directly through the authorized dealer's terminal.

---

[2] Defendants routinely adjust their Scheme to attempt to circumvent the information and training that Sprint provides to its dealers and retailers to identify and thwart fraudsters like Defendants who misrepresent their identities to unlawfully gain access to Sprint's computers for their profit.

[3] Authorized Sprint dealers have direct access to Sprint's protected computer network to perform tasks such as placing orders, making changes to customers' accounts, and signing up new customers for Sprint service.

[4] A digital certificate, or public key certificate, is an electronic passport that allows computers to securely exchange information over the internet.

Moreover, because Defendants can perpetrate their Scheme from anywhere by using TeamViewer, Defendants target Sprint dealers and their customers nationwide.

45.     If Defendants are able to illicitly obtain unauthorized access into Sprint's protected computer systems and customer accounts to order new Sprint devices, they change the shipping address for the orders and have the new Sprint Phones shipped to one of their addresses, the addresses of their co-conspirators or, upon information and belief, to nearby residences and businesses that are staffed by Defendants or their co-conspirators from where the packages are then intercepted.  Upon information and belief, Defendants have a network of co-conspirators across the country who accept or retrieve the shipments of fraudulently ordered new Sprint mobile devices at these various locations.

46.     Sprint's investigation identified that Defendants have directed fraudulently placed equipment orders to be shipped to twenty-four (24) states across the country, including at least 318 orders directed to be shipped to locations in and around Chicago, Illinois.  Once the fraudulently-acquired equipment is received by Defendants and their co-conspirators, on information and belief, the new Sprint devices are processed for resale by Defendants and/or their co-conspirators.

47.     As the equipment orders are unauthorized by the Sprint customers whose accounts were targeted by Defendants, in addition to the damage Sprint sustains as a result of having Products carrying Sprint Marks trafficked by Defendants in violation of Sprint's rights, its relationships with its customers and dealers are undermined, its protected computer systems are compromised, and Sprint never receives any payment for these stolen phones.

48.     In 2012, Defendant Antwon Robinson was identified as a participant in the Scheme when numerous fraudulent orders placed through TeamViewer were delivered to

14

multiple addresses associated with him. When Sprint's investigators interviewed Antwon Robinson in January 2015, he confirmed that at one time he worked for an authorized Boost dealer, assisting with sales and inventory, and gained knowledge as to how Sprint's protected computer network operates. Upon information and belief, Defendant became familiar with TeamViewer during his previous employment as well, because the Boost dealer that employed Antwon Robinson used TeamViewer to track sales data and employee computer usage.

49. Antwon Robinson also admitted that in 2009, he was arrested by the United States Secret Service for his involvement in trafficking goods. Antwon Robinson's job in that trafficking ring was to identify and provide delivery locations for the fraudulently obtained goods; on information and belief, Antwon Robinson plays a similar role in the Scheme, *inter alia*, directing fraudulently ordered new Sprint equipment to hundreds of delivery locations nationwide. In 2012, Antwon Robinson was again interrogated by law enforcement regarding fraudulent shipments of goods that were tracked to addresses with which he is associated.

50. Defendant Droney admitted to having acted as a runner and/or credit mule— acquiring new Sprint Phones under false pretenses solely for resale. On information and belief, the use of runners and credit mules is another source of new Sprint Phones exploited by Defendants as part of their Scheme.

51. As set forth above, Sprint has identified hundreds of fraudulent orders placed by Defendants as part of their Scheme to defraud Sprint and its customers. For example, in August 2012, Sprint identified numerous fraudulent equipment orders being shipped to various locations in the Chicago, Illinois area; all of the fraudulent orders originated from an authorized Sprint dealer, United Cellular, in Mobile, Alabama. Upon investigation, Sprint determined that TeamViewer software had been installed in United Cellular's computer system without

15

authorization and United Cellular's computer system was accessed remotely by Defendants. Sprint learned that one of United Cellular's then-employees, Defendant Keith Jones was approached and offered several hundred dollars to load the TeamViewer software onto the United Cellular's computer. Defendant Jones accepted the offer and, without authorization from Sprint or United Cellular, he uploaded TeamViewer. Defendant Jones was arrested for his criminal conduct. A copy of the September 13, 2012 Montgomery Police Department Case Report is attached as **Exhibit E**.

52.    Using TeamViewer, Defendants were able to place at least 32 fraudulent orders encompassing 447 new Sprint Phones through United Cellular, all of which were directed to be shipped to various addresses associated with Defendants and/or their co-conspirators.

53.    As another example of Defendants' illegal activity, on October 2, 2012, a fraudulent order for eighteen (18) new Sprint handsets was placed on a legitimate business account through TeamViewer, which was installed without authorization on the computer at Omni Cell, Inc., in East Lansing, Michigan. Defendants accessed Sprint's order entry system and changed the delivery address on the targeted account and directed the order be shipped to 15240 Dante Avenue, Dolton, Illinois 60419. This residence is owned by Defendant Joan Robinson, who, at the time the fraudulent order was placed, also resided there.

54.    As another example, on November 24, 2014, Sprint authorized dealer Wireless View PCS, LLC ("Wireless View") was targeted by Defendants. Upon information and belief, Defendants used fraud and misrepresentation to trick a Wireless View employee to upload the TeamViewer software onto the dealer's computer system, without proper authorization. On this date, Defendants used TeamViewer to gain access to Sprint's order entry system to place a fraudulent equipment order on the account of a legitimate business customer for twenty (20) new

16

Sprint devices that were delivered the following day to Defendants' intended delivery location at 219 N. 33rd Street, Milwaukee, Wisconsin 53208.

55.     As yet another example, on December 1, 2014, Sprint dealer PCS Experts, Inc. ("PCS Experts") was targeted by Defendants.  Upon information and belief, Defendants again used fraud and misrepresentation to trick a PCS Experts employee to upload the TeamViewer software onto the dealer's computer system, without proper authorization.  On this date, Defendants used TeamViewer to gain access to Sprint's order entry system to place a fraudulent equipment order on the account of a legitimate business customer for nineteen (19) new Sprint devices that were delivered to Defendants' intended delivery location at 1258 Garbry Road, Piqua, Ohio 45356.

56.     In September 2012, Defendants used a shortcut to avoid having to load TeamViewer onto the computer of Sprint authorized dealer, Wireless Lifestyle, in Orland Park, Illinois.  In this instance, Defendants acquired Wireless Lifestyle's digital certificate, and there was no need to install TeamViewer.  Once Defendants gained access to Sprint's protected network through the authorized Wireless Lifestyle digital certificate, Defendants used the credentials of other dealers that they had previously obtained through the Scheme to process fraudulent orders on legitimate Sprint customers' accounts.

57.     During the investigation, Sprint determined that Defendant Jonathan Walker was the Wireless Lifestyle employee who improperly used the digital certificate to allow Defendants to bypass Sprint's firewall and gain access to the system to place the fraudulent orders.  Upon information and belief, Defendant Walker is an associate of Defendant Jones.

58.     Defendants' fraudulent orders placed through Wireless Lifestyle were directed to numerous addresses associated with Defendants, including: the address of Antwon Robinson's

17

prior business, A & D Mobile Pulse LLC, 151 W. 144th Street, Riverdale, Illinois 60827; 1448 E. 156th Street, Dolton, Illinois 60419, which is also one of Defendant Antwon Robinson's prior residences; 13735 Venetian Court, Orland Park, Illinois 60467, which was the residence of Antwon Robinson's girlfriend, Defendant Jacox, at the time; 153 Camelot Way, Bolingbrook, Illinois 60440, which is a residence associated with Defendant Antwon Robinson; and 1115 191st Street, Homewood, Illinois 60430, which has been associated with Defendants Antwon Robinson, Bettie Jacox, and Michael Droney for years.

59.     Moreover, Defendants' 1115 191st Street, Homewood, Illinois address was also the delivery location for two fraudulent TeamViewer equipment orders, encompassing 37 new Sprint devices and it was the location of an additional two fraudulent TeamViewer equipment orders, which, if not intercepted by Sprint, would have resulted in a loss of an additional 18 Sprint devices.   Defendant Droney, associated with the Homewood, Illinois address, was previously employed by an authorized Boost dealer and therefore has knowledge of Sprint's computer network and internal procedures.   Sprint also identified Defendant Droney using sprint.com to check the status of orders fraudulently placed through TeamViewer on behalf of Defendants.

60.     Since at least August 3, 2012, Defendants have targeted numerous authorized Sprint dealers nationwide.   During this time, Defendants fraudulently placed at least 711 orders, encompassing at least 8,472 new Sprint devices on legitimate Sprint accounts using TeamViewer software and digital certificates to gain unauthorized access into Sprint's protected computer system and place fraudulent orders on the accounts of legitimate Sprint customers.   Defendants directed these fraudulent orders to be delivered to over 430 locations nationwide staffed by

Defendants and their co-conspirators to collect the packages in preparation for resale by Defendants for profit, and to Sprint's detriment.

61.     Fortunately, Sprint, in vigilantly attempting to ferret out Defendants' fraud, has been able to identify some of the fraudulent orders in time to cancel them prior to shipment. Nevertheless, from August 3, 2012 to December 1, 2014, Sprint has been able to identify at least 213 successful orders, encompassing 2,131 new Sprint devices on legitimate Sprint accounts, placed by Defendants, all of which were delivered to Defendants and their co-conspirators at 148 delivery locations.

62.     Upon information and belief, each delivery was accepted by a Defendant or one of Defendants' co-conspirators and all of the 2,131 new Sprint devices were collected, processed, and resold by Defendants for their own profit.

63.     Defendants' fraudulent activities have caused significant damage to Sprint.  In addition to the damage caused as result of the stolen equipment and damage to Sprint's Marks and business reputation, *inter alia*, on information and belief, Sprint lost important, legitimate Sprint customer accounts.

64.     Upon information and belief, this is only a portion of the fraud and illicit activity that Defendants and their co-conspirators have been and are committing against Sprint and its customers.  As the equipment orders are unauthorized by the Sprint customers whose accounts were targeted by Defendants, in addition to the damage Sprint sustains as a result of having subsidized Products carrying Sprint Marks trafficked by Defendants in violation of Sprint's rights. Sprint never received any payment for these stolen Phones.

65.     Furthermore, Sprint has incurred significant damages in its proactive efforts to identify and remediate the effects of Defendants' fraudulent conduct on Sprint, its authorized

dealers, and its customers' accounts. Defendants' fraudulent activities have caused irreparable harm to Sprint's business, image and reputation, and Sprint's remediation of Defendants' actions has caused Sprint to incur significant additional losses.

**SUBSTANTIAL HARM CAUSED BY DEFENDANTS' MISCONDUCT**

66.     Defendants' actions substantially harm Sprint in several ways, including *inter alia*: (1) Sprint loses its substantial investment in Sprint Phones; (2) Sprint is deprived of the opportunity to earn profits by providing wireless service to legitimate Sprint consumers; (3) Sprint is hampered in its ability to migrate its customers from older to newer technology through legitimate timely upgrades, which negatively impacts the efficiency of Sprint's wireless network speed; (4) Sprint's brand, image, and reputation are harmed by the inability to timely remove old Phone models from circulation through legitimate upgrades; (5) Defendants' actions seriously and irreparably interfere with Sprint's relationships with its dealers, retailers, and customers; and (6) Defendants' infringement of the Sprint name and Marks causes significant ongoing and irreparable losses and harm to Sprint's brand, image, and reputation. All of these factors undermine Sprint's competitive edge in the cellular phone industry.

67.     On information and belief, the conduct of Defendants, their unknown co-conspirators, and others who engage in the unlawful acquisition and resale of new Sprint Phones has also resulted in shortages of available Sprint Phones, particularly the most in-demand models. This misconduct substantially harms Sprint and its relationship with dealers, retailers, and consumers because Sprint is not able to supply sufficient handsets to satisfy the demand from legitimate consumers who, as a result, go elsewhere for their telecommunications services.

68.     Sprint suffers additional, irreparable harm when its Phones are removed, by Defendants or their co-conspirators, from the original packaging, and altered because Sprint is

deprived of the means to control the quality of its product. This becomes especially damaging where a potential legitimate Sprint customer within the United States acquires a Phone from Defendants or their co-conspirators, that the customer believes is a genuine Sprint Phone, with all of the attendant benefits and is later disappointed in Sprint because the Phone does not work as intended on the Sprint network because it has been denominated a Bad ESN Phone or otherwise. Furthermore, the process of unlocking and reselling a Sprint Phone voids the manufacturer's warranty on the device. The unlocked repackaged Sprint Phones are then resold without the original manufacturer's warranty documentation. Both consumers and Sprint are harmed when a Sprint Phone that has been altered or sold by Defendants or their co-conspirators is submitted for warranty repair. Consumers who purchase Sprint Phones from Defendants or their co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones. As a result, Sprint's reputation suffers further.

69.     Additionally, confused customers, relying on Defendants' representations and the Sprint Marks on the Phones they purchased from Defendants, look to Sprint to resolve their questions. Sprint incurs substantial costs associated with calls to its customer relations of department to resolve the issues created by Defendants.

70.     Sprint's reputation is further damaged by its inability to assist those consumers who buy Sprint Phones from Defendants, because despite bearing the Sprint Marks, they are no longer valid Sprint Phones because the actions of Defendants and their co-conspirators voided the warranties and as Bad ESN phones, they cannot be activated on the Sprint network. Further, Sprint has spent significant time and effort, and the associated cost, to remedy Defendants' fraudulent actions within the Sprint system and attempting to resolve issues on legitimate Sprint accounts that were affected by Defendants' fraud.

71.     Defendants' conduct has resulted in the dilution of the Sprint Marks and in substantial harm to Sprint's business reputation and goodwill; Defendants' conduct creates a serious likelihood of confusion, mistake, and deception as to the source of origin of Sprint products that are unlawfully sold by the Defendants and creates confusion as to what, if any, relationship exists between Sprint and Defendants.

72.     As set forth above, part of Defendants and their co-conspirators' Scheme includes stealing legitimate customer upgrades by, *inter alia*, stealing the subsidized handset upgrades available on those legitimate Sprint customer accounts that they target, and retaining those new devices while the legitimate customers are left with outdated devices.   The practice of stealing upgrade Phones not only misappropriates Sprint's investment in the new Phones, intended for the customer, but also hinders Sprint's objective of regularly migrating customers to newer devices that work more effectively on Sprint's updated networks.  This migration cannot occur when older devices remain in consumer circulation longer than intended. Defendants' conduct causes harm to Sprint's reputation with its customers, whose devices may no longer work on Sprint's network and other customers, who were defrauded out of their subsidized Phone upgrade, no longer have the ability to upgrade their phone if it breaks, and may blame Sprint and leave for another service provider.

73.     Defendants' Scheme also violates numerous state and federal identity theft, password-trafficking, and anti-phishing laws, including 18 U.S.C. § 1028(a)(7) (fraudulent transmission of identification information); 18 U.S.C. § 1029 (fraud in connection with access devices); 18 U.S.C. §1030 (fraud by computer); 18 U.S.C. §1341 (fraud by mail); 18 U.S.C. §1343 (fraud by wire); and 18 U.S.C. §1346 (scheme to defraud), as well as the Telephone Records and Privacy Protection Act of 2006, 18 U.S.C. § 1039 ("TRAPPA"), which prohibits

pretexting and other unauthorized access of telecommunications carriers' records. Specifically, TRAPPA criminalizes, among other things: (a) making false or fraudulent statements or representations to an employee or a customer of a telecommunications carrier; (b) accessing a telecommunications customer's account without authorization; (c) the unauthorized sale or transfer of customer records or information; and (d) the unauthorized purchase or receipt of customer records and information. Defendants' conspiracy involves precisely this type of criminal conduct.

## CIVIL LITIGATION AGAINST OTHER PHONE TRAFFICKERS

74.     Federal courts have recognized that conduct similar to Defendants' conduct is unlawful.

75.     In addition to Sprint, T-Mobile USA, Inc., TracFone Wireless, Inc., Nokia Corporation, and AT&T Mobility LLC have each filed multiple lawsuits in numerous federal courts across the country against other traffickers engaged in the practice of defrauding legitimate consumers by acquiring large quantities of wireless telephones and reselling them for profit. Each of those companies has succeeded in obtaining Final Judgments and Permanent Injunctions. Copies of several examples of Final Judgments and Permanent Injunctions are attached hereto as **Composite Exhibit F**. A defendant in one case who continued trafficking in phones in violation of an injunction issued by the U.S. District Court for the Southern District of Texas was charged with criminal contempt of court and sentenced to serve 57 months in prison. Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit G**.

## CRIMINAL INVESTIGATION AND
## PROSECUTION OF PHONE TRAFFICKING

23

76.     Phone traffickers like Defendants have been the subject of numerous criminal investigations and prosecutions across the country.  Some examples are:

a.     In August 2014, the United States Attorney for the District of Minnesota announced the indictment of 20 individuals engaged in the illegal acquisition and resale of tens of thousands of Smartphones to the black markets of the Middle East and China.  A joint task force comprised of the U.S. Secret Service, the Minnesota Financial Crimes Task Force, and the St. Paul Police Department investigated and then apprehended members of the "Mustafa Organization," who had been using runners, engaged in contract and subscription fraud, and robbery to acquire large quantities of subsidized phones for overseas resale.

b.     In March 2013, the California Attorney General charged two individuals with trafficking nearly $4M in wireless phones to Hong Kong over an 8 month period.

c.     On or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided a warehouse belonging to a phone trafficking company called Wireless Buybacks in Elkridge, Maryland, pursuant to a search warrant and found the facilities were being used to harbor stolen Sprint Phones.  Sprint filed suit against Wireless Buybacks and its affiliates the following day.

d.     On August 21, 2012, federal Homeland Security agents and SWAT teams conducted a raid on facilities operated by handset trafficker Ace Wholesale, and at the home of the company's CEO, Jason Floarea.  Later the same day, Sprint filed suit in federal court against Ace Wholesale, Floarea, and several affiliated

entities and persons asserting handset trafficking claims similar to those asserted here. On October 16, 2014, Mr. Floarea, pled guilty to Interstate Transportation of Stolen Property, in part, in connection with trafficking Sprint Phones.

e. An FBI sting operation in Philadelphia that began with wireless phone trafficking resulted in the conviction of 16 individuals on terrorism charges, when it turned out that the proceeds from their phone trafficking and other illegal conduct was being funneled to the terrorist organization Hezbollah.

Copies of court documents, press releases, and news reports regarding these incidents are attached hereto as **Composite Exhibit H**.

## <u>COUNT ONE</u>

### **TORTIOUS INTERFERENCE WITH EXISTING BUSINESS RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE**

77.    Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

78.    A business relationship, and an expectancy of business relationships, exists between Sprint and authorized dealers of Sprint Phones.

79.    A business relationship, and an expectancy of business relationships, exists between Sprint and authorized retailers of Sprint Phones.

80.    A business relationship, and an expectancy of business relationships, exists between Sprint and current and prospective Sprint customers, including business customers.

81.    There is a high probability of future economic benefit to Sprint as a result of these current and prospective business relationships.

82.    Defendants have knowledge of and have intentionally and unjustifiably interfered with, and/or have knowingly facilitated a conspiracy to interfere with, these current

and prospective business relationships between Sprint, authorized dealers and retailers who sell Sprint products, and legitimate Sprint customers or prospective customers.

83.     Specifically, but without limitation, Defendants knew that Sprint has business relationships, and an expectancy of business relationships, with legitimate consumers of Sprint Phones and wireless service.  Defendants interfered with these relationships by engaging in the Handset Theft and Trafficking Scheme and causing, at least in part, Sprint to have an insufficient supply of Sprint Phones available to meet legitimate consumer demand.  Defendants also interfered with these relationships by fraudulently obtaining access into Sprint's protected computer network by defrauding authorized Sprint dealers and placing fraudulent orders on legitimate customer accounts creating disgruntled Sprint customers and dealers.

84.     Defendants also knew that Sprint has business relationships with authorized dealers and retailers of Sprint Phones to provide said dealers with sufficient quantities of Sprint Phones for their legitimate consumers' use exclusively on Sprint's wireless network. Defendants' Scheme has resulted in substantial numbers of Sprint Phones that are never activated on Sprint service and has further caused shortages of available Sprint Phones, thereby substantially harming Sprint and its relationship with its authorized dealers and retailers because Sprint is unable to supply dealers with sufficient Phones to satisfy the demands from legitimate consumers.

85.     Defendants also knew that Sprint has business relationships with legitimate Sprint customers to provide them with Phones and service on the Sprint network.

86.     Defendants are intentionally interfering with Sprint's business relationships and prospective advantages through improper means and in violation of the law.

87.     Defendants engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendants knew that the interference was certain or substantially certain to occur as a result of their conduct.

88.     As set forth fully below, Defendants' intentional interference was committed through the use of fraud and fraudulent misrepresentations to Defendants' direct benefit and to the detriment of Sprint.

89.     Defendants' acts injured Sprint's existing business relationships and has prevented expectant business relationships from developing .

90.     Sprint has been proximately damaged and continues to be damaged as a result of Defendants' interference.

91.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' tortious interference.

## COUNT TWO

## CIVIL CONSPIRACY

92.     Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

93.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to fraudulently acquire, market, and resell unlawfully acquired and altered Sprint Phones under at least one of the Sprint Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relationships and prospective advantage, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

27

94.     Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

95.     Sprint has been proximately damaged by the conspiracy and Defendants' actions in furtherance of the conspiracy.

96.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy.

## COUNT THREE

### CONSPIRACY TO DEFRAUD

97.     Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above, and Paragraphs 108 through 115 below as though fully set forth herein.

98.     An agreement and conspiracy existed and continues to exist between and among the Defendants and other co-conspirators to unlawfully acquire, market, and sell unlawfully acquired and altered Sprint Phones under at least one of the Sprint Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relationships and prospective advantage, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

99.     Each Defendant knowingly agreed to engage, and did engage, in one or more overt acts of fraud in pursuit of the conspiracy as set forth with more particularity in this Complaint.

100.     Sprint has been proximately damaged as a result of fraud committed by Defendants' in furtherance of their conspiracy.

101.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' conspiracy.

## COUNT FOUR

### UNJUST ENRICHMENT

102.    Sprint reasserts the allegations set forth in Paragraphs 1 through 65 above, and Paragraphs 108 through 115 below as though fully set forth herein.

103.    By fraudulently acquiring new Sprint Phones through egregious misrepresentations and outright theft, Defendants have obtained benefits from Sprint which have caused significant harm to Sprint and resulted in significant financial gain to Defendants through their sale of the illicitly-acquired new Sprint Phones.

104.    Defendants have fraudulently acquired the benefits voluntarily and with full knowledge of the benefits.

105.    Defendants have retained the benefits under such circumstances that make it unjust and inequitable for Defendants to retain the benefits without paying Sprint the value of the benefits Defendants acquired.

106.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' unjust enrichment.

## COUNT FIVE

### COMMON LAW FRAUD AND FRAUDULENT MISREPRESENTATION

107.    Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

108.    As part of the Handset Theft and Trafficking Scheme, each of the Defendants, directly or indirectly through co-conspirators, regularly and systematically misrepresents and

makes fraudulent statements to Sprint directly, or indirectly through authorized Sprint dealers, that they are employees of Sprint who are authorized to access Sprint's protected computer networks and make changes to or place orders on legitimate accounts, that the Phones are being acquired by a legitimate account holder for a legitimate purpose, that the Phones will be used on Sprint's wireless network, that the purchases are authorized by the Sprint account holder, and that they will perform in accordance with the Terms and Conditions.

109.    On information and belief, each Defendant participated in defrauding Sprint, and its legitimate customers, retailers, and dealers, to acquire new Sprint Phones and devices, including the models identified *supra*, for unlocking, sale, and ultimately for shipping overseas.

110.    Defendants knowingly and intentionally misrepresent themselves as employees of Sprint for the purpose of inducing Sprint to rely on these gross misrepresentations to fraudulently obtain Sprint Phones which they know were not authorized and will not be used in accordance with the Terms and Conditions.

111.    When Defendants, directly or through their co-conspirators, acquire Sprint Phones as part of the Scheme, they know they do not have authority to access Sprint's protected computer network or to access and order Sprint Phones on the legitimate Sprint accounts. And, they do not intend to use the Phones for a legitimate purpose or to activate them or maintain them as active on Sprint's wireless network, or otherwise perform in accordance with the Terms and Conditions.

112.    Defendants intend for Sprint to rely on their misrepresentations, and/or the misrepresentations of their co-conspirators, including dealer credentials, that allow Defendants to access the accounts and to acquire and alter the Phones for improper purposes.

113.     Sprint's reliance on the misrepresentations of Defendants and their co-conspirators was reasonable under the circumstances.

114.     Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

115.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' fraud.

**COUNT SIX**

**TRAFFICKING IN COMPUTER PASSWORDS**
**18 U.S.C. § 1030(a)(6)**

116.     Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

117.     The Sprint Phones that are trafficked by Defendants are loaded with confidential codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks").  As such, the Phones act as a gateway to Sprint's protected computer networks.  Sprint restricts access to these protected computer networks through, among other things, the confidential codes/passwords contained in the Phones and the confidential codes and security PINs protecting Sprint accounts ("security codes").  Defendants also access Sprint's protected computer networks by utilizing the digital certificates of authorized Sprint dealers to gain access to Sprint's computer billing network.

118.     Through their Scheme, Defendants are knowingly trafficking in the confidential codes contained in the Phones and the associated security codes with the intent to defraud Sprint.

119.     Defendants use fraud and misrepresentation to acquire direct access to Sprint's protected computer network through Sprint dealers' digital certificates.  Defendants' use of fraud

31

and misrepresentation to acquire the security codes and encoded Phones from Sprint voids the purchase agreement and any legitimate access to Sprint's computer networks. As such, Defendants' access into Sprint's protected computer networks is not authorized in any way.

120. Upon information and belief, once Defendants illicitly acquire the Sprint Phones, they use Sprint's confidential codes/passwords to gain additional access to Sprint's protected computer networks. This additional access into Sprint's protected computer networks is not authorized in any way. Upon information and belief, Defendants share these confidential codes/passwords among themselves and with their co-conspirators.

121. Upon information and belief, Defendants unlawfully access Sprint's protected computer networks using Sprint's confidential codes/passwords and authorized dealer's digital certificates to: (1) make unauthorized changes to customer accounts; (2) place unauthorized orders for equipment and service; (3) perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network; and/or (4) unlock the Sprint Phone, which requires the manipulation and oftentimes permanent deletion of the proprietary software that is installed in Sprint Phones and to make unauthorized changes to Sprint's protected computer networks, so that the Sprint Phone will operate on other wireless networks.

122. Through the Scheme, Defendants are knowingly trafficking in the confidential codes/passwords and digital certificates with the intent to defraud and harm Sprint.

123. Defendants' transfer of the Phones, confidential codes, and digital certificates to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the confidential codes/passwords were transferred, or otherwise disposed of, to others, or Defendants obtained control of the codes/passwords with intent to transfer or dispose of them.

32

124.    Defendants' trafficking of the Phones and digital certificates substantially affects interstate commerce and communication in that the codes/passwords contained in the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's protected computer networks are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

125.    Defendants' trafficking of Sprint's codes/passwords and digital certificates has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

126.    With respect to loss, Sprint has spent well in excess of $5,000 over a one-year period assessing its protected computer networks for damage from Defendants' hacking and taking steps to upgrade Sprint's protected computer networks' defenses to prevent future unauthorized access by Defendants and/or their co-conspirators.

127.    Also with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period investigating Defendants' intrusions into Sprint's protected computer networks, assessing the possible impairment to the integrity of its protected computer networks, taking action to counteract Defendants' theft, and conducting a damage assessment regarding Defendants' collection and dissemination of Sprint Phones and security codes, as well as tracking down fraudulently sold Phones.

128.    Sprint has also spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identities and/or the methods by which Defendants' access Sprint's protected computer networks without authorization.

129.    With respect to damage, by infiltrating the Sprint computer and telecommunications network and ordering, collecting, and disseminating the illegally activated Phones and codes/passwords, Defendants have substantially impaired the integrity of Sprint's protected computer networks in an amount in excess of $5,000. Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its products and services.

130.    Defendants' activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

131.    Defendants' conduct is intentional, malicious and willful.

132.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief for the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT SEVEN

### UNAUTHORIZED ACCESS
### 18 U.S.C. § 1030(a)(5)(C)

133.    Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

134.    The Sprint Phones that are acquired by the Defendants, directly and/or from their co-conspirators in furtherance of the Scheme, are loaded with codes/passwords that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, "Sprint's protected computer networks"). Moreover, Sprint protects its customer accounts and its proprietary

computer system by requiring personal identifying information, such as PINs, passwords, and/or social security or other information to access, make changes, or place orders on customers' accounts, and Sprint's authorized dealers must use confidential digital certificates to gain access to the Sprint order entry system on the protected computer network, for the same purposes ("security codes").

135.   Sprint Phones are connected to and activated on Sprint's protected computer networks when purchased from Sprint.

136.   Sprint's proprietary computer system holds confidential information and provides access to Sprint customer accounts.  It is connected to the internet, and assists in providing federally-regulated telecommunications services.  Sprint's computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

137.   Through fraudulent means, Defendants and their co-conspirators improperly obtain the identifying security information and/or access to dealer's digital certificates necessary to access, place orders, and make changes to Sprint accounts.

138.   Defendants knowingly and with the intent to defraud, cause Sprint to access its proprietary computer systems.  Defendants are not authorized to do so.

139.   Further, by illicitly acquiring and unlocking the Phones, Defendants necessarily access the Sprint protected computer networks because the Phones are connected to those networks when acquired from Sprint.

140.   Defendants use fraud and misrepresentation to acquire the Phones from Sprint, and, as such, Defendants' access of Sprint's protected computer networks is not authorized in any way.

141.    Upon information and belief, when Defendants acquire a Sprint Phone, Defendants carefully examine the Phone, turn it on, and perform various tests to confirm that the Phone they are purchasing is, in fact, active on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct.   This too constitutes unauthorized access of Sprint's protected computer networks via a password obtained through fraud and misrepresentation.

142.    By trafficking in activated Sprint Phones, the Defendants are also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

143.    Defendants' illegal and unauthorized access of Sprint's protected computer systems allows them to improperly steal Sprint's investment in its Phones.

144.    Through this improper access, Defendants knowingly make changes as well as cause Sprint to make changes to customer accounts that Sprint would not otherwise make, such as adding additional phone lines, stealing upgrades, or placing orders for equipment.

145.    Defendants'    activities    substantially    affect    interstate    commerce    and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

146.    Defendants' unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

147.   With respect to loss, Sprint has lost its investments in the stolen Phones and security codes and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking remedial action to counteract Defendants' intrusions, and conducting a damage assessment regarding Defendants' unauthorized access of customer accounts and collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones and attempting to resolve customer disputes.

148.   Moreover, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identity and/or the method by which Defendants' accessed Sprint's protected computer networks without authorization.

149.   With respect to damage, by infiltrating the Sprint computer systems and ordering, collecting, and disseminating the illegally trafficked Phones and security codes, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's financial investment in its Phones.

150.   Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

151.   Defendants' conduct is intentional, malicious and willful.

152.   Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated at least $5,000 in value.

## COUNT EIGHT

### UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
### 18 U.S.C. § 1030(a)(4)

153.    Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

154.    Sprint protects access to its proprietary computer system, by requiring personal identifying information, such as PINs, passwords and/or social security numbers, to make changes to its customers' accounts. Sprint further protects access to its proprietary computer system by requiring Sprint dealers to use confidential digital certificates to gain access to Sprint's order entry system, which is part of Sprint's protected computer network.

155.    Sprint's proprietary computer system stores confidential information.  It is connected to the internet, and assists in providing federally-regulated telecommunications services.  Sprint's computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

156.    Through fraudulent means, Defendants and their co-conspirators improperly access Sprint's protected computer network through digital certificates as well as obtain customer information, including confidential PINs, passwords and/or social security numbers, and other identifiers necessary to access and make changes to its customers' accounts.

157.    Using these improperly obtained "pass-codes" and digital certificates, Defendants knowingly and with the intent to defraud, directly access and/or cause Sprint to access its proprietary computer systems and make unauthorized changes to Sprint accounts. Defendants are not authorized to do so.  Defendants' conduct also exceeds authorized access, as defined by Section 1030(e)(6) of the Computer Fraud and Abuse Act, in that Defendants access

Sprint's proprietary computer systems and Sprint accounts by misrepresenting that they are authorized to access such systems, and Defendants use such access to alter customer accounts, change access, and place orders for Sprint products in the Sprint computer system (which they were not entitled to alter or obtain access).

158.    Sprint's customer accounts and proprietary computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

159.    Through this improper access, Defendants knowingly further their fraudulent Handset Theft and Trafficking Scheme and directly make changes and/or cause Sprint to make changes to customer accounts that Sprint would not otherwise make, such as adding lines of service, changing the address or email address on the account, and ordering equipment.

160.    By means of the above-described conduct, Defendants further their fraudulent Scheme to obtain handsets, service, and other benefits with significant value for their profit and to the detriment of Sprint and its customers.

161.    Defendants'    activities    substantially    affect    interstate    commerce    and communication in that the stolen Phones, the improperly accessed accounts and the proprietary computer systems are all used in and affect interstate commerce and communication.

162.    Defendants' unauthorized access of Sprint's customer accounts and protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively -- substantially in excess of $5,000 over a one-year period.

163.    With respect to loss, Sprint has spent well in excess of $5,000 over a one-year period assessing its protected computer networks for damage due to Defendants' hacking and

taking steps to upgrade Sprint's protected computer networks' defenses to prevent future unauthorized access by Defendants and/or their co-conspirators.

164.    In addition, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period identifying the impairment of or damage to Sprint's protected computer networks that Defendants' and/or their co-conspirators accessed without authorization.

165.    Further, with respect to loss, Sprint has spent well in excess of $5,000 over a one-year period in costs associated with investigating Defendants' and/or their co-conspirators' intrusions into Sprint's protected computer networks and taking subsequent remedial measures.

166.    Sprint has also spent well in excess of $5,000 over a one-year period in costs to discover Defendants' identity and/or the method by which Defendants' accessed Sprint's protected computer networks without authorization.

167.    With respect to damage, by infiltrating the Sprint computer network and stealing service and equipment, disseminating illegally obtained Phones, and changing legitimate customer account information, Defendants have substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.  Moreover, Defendants' actions have deprived Sprint of the opportunity to control the quality of its products and services, as well as to earn revenue from legitimate customers, and to recoup Sprint's investment in the Phones stolen by Defendants.

168.    Defendants' activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

169.    Defendants' conduct is intentional, fraudulent, malicious and willful.

170.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendants to obtain compensatory damages and injunctive and other equitable relief

because of the reasons identified above, and because Defendants' conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendants' conduct during any one year period aggregated is at least $5,000 in value.

## COUNT NINE

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114 [§ 32(1) of the Lanham Act]

171.     Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

172.     Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of certain federally-registered Sprint Communications Marks without authorization in connection with their conspiracy to sell and offer for sale materially-different, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state, may not be activated on Sprint service, and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

173.     Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks in connection with the sale of Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' infringing products, and the relationship between Sprint Communications and Defendants.

174.     Defendants' and/or their co-conspirators' unauthorized use of certain federally-registered Sprint Communications Marks in connection with their fraudulent enterprise to steal from Sprint and its customers is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint Communications.

41

175.     Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks in connection with the materially-different, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, and may have been flagged as "Bad ESN" Phones and not able to be activated on the Sprint network, constitutes a misappropriation of Sprint Communications' distinguishing and identifying federally-registered trademarks that were created as a result of significant effort and expense by Sprint Communications over a long period of time.

176.     Defendants' and/or their co-conspirators' use of certain federally-registered Sprint Communications Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of  Defendants have some connection, association or affiliation with Sprint Communications, and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint Communications.

177.     In committing the foregoing acts in commerce, Defendants, who fraudulently represent themselves as Sprint employees and customers, have damaged, and will continue to damage, Sprint Communications and the reputation and goodwill of Sprint Communications, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint Communications.

178.     Sprint Communications is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

179.    Defendants' aforesaid acts constitute willful infringement of Sprint Communications aforementioned federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT TEN

### FEDERAL COMMON LAW TRADEMARK INFRINGEMENT AND FALSE ADVERTISING
### 15 U.S.C. § 1125 (a)(1)(A) and (B) [§ 43(a) of the Lanham Act]

180.    Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

181.    Defendants' and/or their co-conspirators' aforementioned conduct constitutes use of at least one of the Sprint Marks without authorization in connection with their conspiracy to sell and offer for sale materially-different, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state, may be inoperable on the Sprint network, and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

182.    Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks in connection with the sale of materially-different, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendants' counterfeit products, and the relationship between Sprint and Defendants.

183.    Defendants' and/or their co-conspirators' unauthorized use of at least one of the Sprint Marks in connection with their fraudulent enterprise to steal from Sprint and its customers is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint.

184.     Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks in connection with the materially-different, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, and may have been flagged as "Bad ESN" Phones and not able to be activated on the Sprint network, constitutes a misappropriation of at least one of the distinguishing and identifying Sprint Marks that was created as a result of significant effort and expense.

185.     Defendants' and/or their co-conspirators' use of at least one of the Sprint Marks, coupled with their false representations as Sprint employees and customers, evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendants have some connection, association or affiliation with Sprint, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendants' products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint.   Defendants are not connected, employed by, or otherwise affiliated with Sprint in any way.

186.     Defendants, in committing the foregoing acts in commerce, have damaged, and will continue to damage, Sprint and the reputation and goodwill of Sprint, and have been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint.

187.     Sprint is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendants are enjoined from committing and continuing to commit such acts.

188.     Defendants' use of at least one of the Sprint Marks in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of their infringing products. Defendants' advertising and promotion is false or misleading.   Defendants' advertising and

44

promotion deceives or has the capacity to deceive consumers. The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

189. Defendants' activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

190. Sprint is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

191. Defendants knew or should have known that Plaintiffs are the owners and/or authorized licensees of the Sprint Marks, and that Defendants have no legal right to use any of the Sprint Marks on their infringing products.

192. Defendants are engaged in and continue to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiffs' lost profits, Defendants' profits, and Plaintiffs' attorneys' fees.

## COUNT ELEVEN

### CONTRIBUTORY TRADEMARK INFRINGEMENT

193. Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

194. By misappropriating and using at least one of the Sprint Marks in connection with the Scheme, Defendants knowingly aided and enabled distributors and/or sellers of their products to market them to members of the general public in a way that infringes at least one of the Sprint Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

195.    Defendants' unlawful, unauthorized, and unlicensed sale of the materially-different Sprint Phones has contributed to the creation of express and implied misrepresentations that the Sprint Phones, as sold by Defendants, who falsely represent themselves as Sprint employees and customers, were created, authorized or approved by Sprint, may be activated on the Sprint network, and include warranties.

196.    Upon information and belief, Defendants' conduct leads to post-sale confusion by causing consumers who purchase Sprint Phones altered by Defendants to believe that they are purchasing handsets approved by Sprint that can be activated on the Sprint network and containing original warranties.

197.    Defendants' conduct constitutes contributory infringement in violation of the Trademark Act.  Defendants' conduct is intentional, malicious, and willful.

198.    Sprint has been damaged and continues to suffer damages as a result of Defendants' actions.

199.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendants' actions.

## COUNT TWELVE

### CONVERSION

200.    Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

201.    Defendants have and are engaged in acts of conversion in violation of the law of the State of Illinois.

202.    Sprint has the right to provide its Phones and wireless service to the public. Defendants have no such privilege or right.

46

203.    Defendants knew or should have known that they obtained the Phones and Sprint service through illegitimate means and had no legal right to advertise, use or sell them.

204.    Defendants are wrongfully interfering with Sprint's rights by engaging in the Handset Theft and Trafficking Scheme.

205.    Defendants intentionally and willfully exert dominion and ownership over the Sprint Products.

206.    Defendants' conversion of Sprint's property has caused and continues to cause Sprint to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at trial.  Unless enjoined by this Court, Defendants will continue these acts, thereby causing Sprint further immediate and irreparable damage.

## COUNT THIRTEEN

### DECEPTIVE TRADE PRACTICES (815 ILCS 505 ET SEQ.) AND COMMON LAW UNFAIR COMPETITION

207.    Sprint reasserts the allegations set forth in Paragraphs 1 through 72 above as though fully set forth herein.

208.    Defendants misrepresent to Sprint and the public that they are authorized to sell legitimate Sprint products.

209.    Defendants have used and are using the Sprint Marks in connection with the above-described Scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their products and services, which are substantially similar to those offered by Sprint.

210.    The use of the Sprint Marks by Defendants creates an unreasonable risk that present and potential consumers may falsely conclude that there exists some affiliation, connection, or association between and among Sprint and Defendants, when none in fact exists.

211.    Defendants' acts have damaged, impaired, and diluted that part of Sprint's goodwill and good name symbolized by the Sprint Marks, which have developed great fame in the marketplace.  The nature, probable tendency, and effect of Defendants' use of the Sprint Marks is to deceive the public.

212.    Defendants' use of the Sprint Marks in connection with their Scheme constitutes unfair competition as codified and prohibited by the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

213.    Defendants had actual knowledge of Sprint's rights at the time they decided to use the Sprint Marks in connection with their Scheme.  Thus, Defendants willfully and deliberately infringed Sprint's trademark rights.

214.    Defendants' unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as to Sprint.  These practices constitute unlawful, unfair, fraudulent, and deceptive business practices, and unfair, deceptive, untrue, and misleading advertising.

215.    As a result of Defendants' acts, Sprint has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial.  Unless enjoined by this court, Defendants will continue these acts, thereby causing Sprint further immediate and irreparable damage.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

WHEREFORE, Plaintiffs, Sprint Solutions, Inc. and Sprint Communications Company L.P., respectfully request that this Court enter final judgment and permanent injunctive relief in favor of Plaintiffs and against Defendants, as follows:

(a) awarding Plaintiffs their compensatory, consequential, statutory and special damages including, without limitation, their lost profits, Defendants' profits, damages for loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding Plaintiffs their reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Plaintiffs and against Defendants, enjoining Defendants from engaging in the unlawful practices described in this Complaint;

(d) requiring Defendants, pursuant to the Lanham Act, to deliver to Plaintiffs their entire inventory of Phones and products bearing or infringing the Sprint Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.


Respectfully submitted this 10th day of February, 2016.


/s/ Kevin Tottis
One of Their Attorneys

Kevin Tottis (ARDC No. 6193853)
Email: KTottis@tottislaw.com
Monica L. Thompson (ARDC No. 6181455)
Email: MThompson@tottislaw.com
Rachel R. Vorbeck (ARDC No. 6238297)
Email: RMVorbeck@tottislaw.com
TOTTISLAW
One East Wacker Drive
Suite 1205

Chicago, Illinois 60601
Phone: (312) 527-1400
Fax: (312) 589-7192

James B. Baldinger
Florida Bar No. 869899
Email: jbaldinger@carltonfields.com
*To be admitted pro hac vice*
Stacey K. Sutton
Florida Bar No. 0289530
Email: ssutton@carltonfields.com
*To be admitted pro hac vice*
**CARLTON FIELDS JORDEN BURT, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401
Phone: (561) 659-7070
Fax: (561) 659-7368


Gail E. Podolsky
Georgia Bar No. 142021
Email: gpodolsky@carltonfields.com
*To be admitted pro hac vice*
**CARLTON FIELDS JORDEN BURT, P.A.**
One Atlantic Center
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
Phone: (404) 815-2714
Fax: (404) 815-3415

*Attorneys for Sprint Solutions, Inc. and
Sprint Communications Company L.P.*